D. Craig Parry (7274)
PARR BROWN GEE & LOVELESS
185 South State Street, Suite 800
Salt Lake City, UT  84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
cparry@parrbrown.com

Bryan Haynes (*Pro Hac Vice Admission Pending*)
Texas State Bar No. 09283520
Eric C. Wood (*Pro Hac Vice Admission Pending*)
Texas State Bar No. 24037737
SCHEEF & STONE, L.L.P.
500 N. Akard, Suite 2700
Dallas, TX  75201
Telephone: (214) 706-4200
Facsimile: (214) 706-4242
bryan.haynes@solidcounsel.com
eric.wood@solidcounsel.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| JETPAY MERCHANT SERVICES, LLC, a limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MERRICK BANK CORPORATION, a Utah corporation,<br><br>Defendant. | **COMPLAINT**<br><br>Case No. 2:12-cv-197-TS<br><br>Judge:  Ted Stewart |

Plaintiff JetPay Merchant Services, LLC ("JetPay") files this complaint against Defendant Merrick Bank Corporation, ("Merrick Bank"), and shows as follows:

1

## I.

## PARTIES

1. Plaintiff JetPay is a limited liability company organized under the laws of the State of Texas with its principal place of business in Texas.

2. Defendant Merrick Bank is a corporation organized under the laws of the State of Utah with its principal place of business in Utah. Merrick may be served by serving its Registered Agent, Brian W. Jones at 10705 S. Jordan Gateway, Suite 200, South Jordan, Utah 84095, or wherever else he may be found.

## II.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Merrick Bank because it is incorporated in Utah and it regularly and continuously conducts business in and from Utah; therefore, it has purposefully availed itself of the benefits and protections offered by the State of Utah.

4. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties to this suit. Additionally, the amount in controversy exceeds $75,000.00, exclusive of interests and costs. The court therefore has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District.

### III.

### FACTUAL BACKGROUND

6.  Historically, credit card processing services were provided by banks that were members of the Visa or Mastercard networks. Typically, banks both issued credit cards and helped merchants process them. Over time the industry consolidated and today very few banks actually issue credit cards. Even fewer banks process credit card transactions. Banks found that it was not within their skill set to convince every small merchant to accept credit cards, and they began to outsource the selling of such services to small companies called Independent Sales Organizations ("ISO"). They also found that massive scale helped reduce the cost of processing credit cards, so they began to outsource processing to a few processors.

7.  Today, the majority of merchants get their credit card processing services from an ISO, which is responsible for selling the service to the merchant, providing technical support, processing the transaction (authorizing it and submitting it to the Visa or Mastercard network), bearing some or all of the risk of chargeback(s), and setting the price of the services. Small ISO's often outsource some of those services (for example providing technical support) to larger ISO's.

8.  JetPay is an ISO and provides merchant service provider services to its merchant clients. These services include establishing merchant accounts with acquiring banks, processing credit card transactions, and reporting on account activity.

9.  An "acquiring bank" is a bank that has a relationship with Visa, MasterCard or other credit card company as well as the merchant's bank. It is sometimes referred to as the clearing bank, through which credit card transactions are cleared. The acquiring bank is responsible to clear transactions between the time they are charged to a cardholder and the time

4847-0713-1150, v. 1

they are deposited into the merchant's bank account. The acquiring bank is the banking entity that actually makes the deposits into a bank account when credit cards are processed.

10. Beginning in or about 2003, JetPay began contracting with Merrick Bank as one of JetPay's acquiring banks for JetPay's merchant clients. In connection with the contract, Merrick Bank required, among other things, that a Merchant Chargeback Insurance Policy be obtained to cover some merchant accounts JetPay established with Merrick Bank on behalf of its customers. A Merchant Chargeback Insurance Policy is an insurance policy that protects the policy holders against, among other things, chargebacks to credit cards resulting from the fraud of others.

11. Merrick Bank secured the Merchant Chargeback Insurance Policy on behalf of JetPay and other ISO's through contact with Gregory Richmond ("Richmond") with Doeren Mayhew Risk Management, LLC ("DMRM") and Merchant Assure, LLC ("MALLC"). Through Richmond, DMRM and/or MALLC, Merrick Bank and JetPay purchased a Merchant Chargeback Insurance Policy (the "JetPay Policy") from General Fidelity Insurance Company ("GFIC"). In connection with the purchase of the JetPay Policy, JetPay made clear, and Richmond, DMRM, MALLC, and Merrick Bank acknowledged, that JetPay was to be and was an insured on such policy.

12. In addition to requiring JetPay to obtain the JetPay Policy, Merrick Bank also required that JetPay pay all of the premiums for the JetPay Policy directly to Merrick Bank, which in turn was to pay those premium payments to GFIC. As Merrick Bank took on the responsibility for ensuring that the premiums for the JetPay Policy were timely paid to GFIC, Merrick Bank became a trustee of the premium payments delivered to Merrick Bank by JetPay.

4

4847-0713-1150, v. 1

13.     Because the JetPay Policy covered transactions involving many of JetPay's merchant clients, and because JetPay's merchant clients often changed, the endorsements to the JetPay Policy also changed often.  These changes included, for example, the addition of new merchant clients to the JetPay Policy and dropping former merchant clients from the JetPay Policy.  In connection with these changes, each of Merrick Bank, Richmond, DMRM, MALLC and GFIC communicated directly and frequently with JetPay, as though it were an insured on the JetPay Policy.  Indeed, as part of these communications, JetPay was consistently referenced and otherwise regarded as an insured under the JetPay Policy.  JetPay even requested documentation of all of the insureds under the JetPay Policy and was provided a spreadsheet which listed JetPay as an insured.  At no time while JetPay was (a) purchasing the JetPay Policy, (b) communicating the multitude of changes to the endorsements to the JetPay Policy, or (c) paying the premiums for the JetPay Policy, did Merrick Bank, Richmond, DMRM, MALLC, GFIC, or any other person or entity advise JetPay that it was purportedly not named as an insured under the JetPay Policy.

14.     After the JetPay Policy was purchased, JetPay entered into a Merchant Agreement with USN Corporation and/or USN Television Group, Inc. (collectively, "USN") for the purpose of providing USN with merchant service provider services.  In keeping with Merrick Bank's requirements, JetPay requested, through Richmond, DMRM, MALLC and Merrick Bank, that GFIC list USN as a merchant covered by the JetPay Policy.  USN was listed as a covered merchant on an endorsement to JetPay's Policy.

15.     For more than two years, the business relationship between JetPay and USN ran as expected with no substantial problems.  However, JetPay began experiencing chargebacks for USN.  Through discussions with USN executives, who made various representations and

4847-0713-1150, v. 1

agreements to cover the chargebacks, JetPay believed that it had resolved the initial issues. However, JetPay continued to incur chargebacks from USN's transactions. Within a couple of months after the first substantial chargebacks from USN began, JetPay incurred approximately $4,000,000.00 in chargeback losses from USN. JetPay immediately terminated its contractual relationship with USN.

16.     Thereafter, JetPay began pursuing USN and its executives to recover the losses it had suffered as a result of their fraud on JetPay. USN filed for bankruptcy and JetPay was unable to recover any amount directly from USN. Through litigation with USN's former executives, JetPay was able to recover a relatively small percentage of the chargeback losses by USN's and its executives' fraud.

17.     JetPay thereafter began making a claim to GFIC under the JetPay Policy for the uncollected chargeback losses it had incurred. Initially, GFIC did not respond and otherwise ignored the communications from JetPay. After multiple communications from JetPay and its counsel, GFIC ultimately told JetPay that it would not investigate the claim or otherwise cover the losses from the USN chargebacks, claiming that JetPay was purportedly not an insured under the JetPay Policy. Although the JetPay Policy had been in place for several years, this was the first time anyone had taken the position that JetPay was not an insured under the JetPay Policy.

## IV.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT

18.     JetPay repeats and realleges the foregoing paragraphs, as if fully set forth herein.

19.     JetPay entered into a contract with Merrick Bank. Pursuant to the agreement between JetPay and Merrick Bank, JetPay was required to obtain the JetPay Policy. Merrick

Bank further required that JetPay pay 100% of the premium payments for the JetPay Policy directly to Merrick Bank. In turn, Merrick Bank agreed to remit such premium payments on behalf of JetPay to GFIC for the JetPay Policy.

20. JetPay fulfilled all material requirements of its contract with Merrick Bank. While Merrick Bank ensured that Merrick Bank was included as an insured on the JetPay Policy, GFIC has alleged that JetPay was not included as an insured under such policy. In the event it is determined that GFIC's allegation is true, Merrick Bank breached its agreement with JetPay by failing to have JetPay included as an insured on the JetPay Policy.

21. Further, Merrick Bank required JetPay to pay 100% of the insurance premiums on the JetPay Policy by making all such payments directly to Merrick Bank. Merrick Bank, in turn, agreed to remit such premium payments on behalf of JetPay to GFIC. In the event it is determined that GFIC's allegation is true, Merrick Bank breached its agreement to remit the premium payments for the benefit of JetPay and instead utilized all such payments solely for its own benefit – i.e., paying premiums on an insurance policy which GFIC alleges includes only Merrick Bank as an insured.

22. Merrick Bank has materially breached its agreement with JetPay. As a result, JetPay has been damaged in an amount not less than $2,000,000.00.

23. Demand has been made upon Merrick Bank for payment of the damages owed by it. Despite such demand, Merrick Bank has failed and refused to pay any amount to JetPay. Accordingly, JetPay is entitled to recover from Merrick Bank its reasonable and necessary attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

### SECOND CAUSE OF ACTION – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

24. JetPay repeats and realleges paragraphs 1-17, as if fully set forth herein.

4847-0713-1150, v. 1

25. A special relationship based on trust existed between JetPay and Merrick Bank. Such relationship arose out of the prior dealings between the parties, as well as Merrick Bank's requirement that JetPay obtain the JetPay Policy through brokers selected by Merrick Bank, and through the requirement that JetPay pay all premium payments for such policy directly to Merrick Bank for remittance to GFIC. Further, Merrick Bank became the trustee over the premium payments paid by JetPay to Merrick Bank.

26. Merrick Bank owed JetPay a duty of good faith and fair dealing in connection with obtaining a Chargeback Insurance Policy which included JetPay as an insured and in properly handling the premium payments made by JetPay for the JetPay Policy.

27. In the event GFIC's allegation that JetPay is not an insured under the JetPay Policy is determined to be true, Merrick Bank violated the trust given to it by JetPay, as well as its duty of good faith and fair dealing, by not ensuring that JetPay was included as an insured on JetPay Policy.

28. Additionally, in that event, Merrick Bank took the premiums JetPay was paying to it, knowing that JetPay believed that Merrick Bank had ensured that JetPay was included as an insured on the JetPay Policy. Merrick Bank then abused its trust, and violated its duty of good faith and fair dealing to JetPay, by failing to use the premiums paid by JetPay to purchase Merchant Chargeback Insurance Policy covering JetPay. Instead, Merrick Bank used such premium payments to purchase a policy covering only itself.

29. As a result of Merrick Bank's breach of its duty of good faith and fair dealing, JetPay has been damaged in an amount not less than $2,000,000.00.

### THIRD CAUSE OF ACTION – NEGLIGENCE

30. JetPay repeats and realleges paragraphs 1-17, as if fully set forth herein.

31. In the alternative, and without waiving any other cause of action, Merrick Bank owed JetPay a duty to act reasonably in seeking and obtaining a Merchant Chargeback Insurance Policy which covered JetPay. Merrick Bank also owed JetPay a duty to act reasonably in accepting premium payments from JetPay for the JetPay Policy and remitting them to GFIC for a Merchant Chargeback Insurance Policy which covered JetPay.

32. In the event GFIC's allegations are found to be trued, Merrick Bank failed to act as a reasonably prudent person would act under the same or similar circumstances when it failed to obtain a Merchant Chargeback Insurance Policy which included JetPay as an insured. Merrick Bank further breached its duty to JetPay when it failed to remit the premiums it received from JetPay to pay for a Merchant Chargeback Insurance Policy which included JetPay as an insured.

33. As a result of each Merrick Bank's acts and omissions, JetPay has been damaged in an amount not less than $2,000,000.00.

### FOURTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

34. JetPay repeats and realleges paragraphs 1-17, as if fully set forth herein.

35. At various times throughout its relationship with JetPay, Merrick Bank made express and/or implied representations to JetPay that JetPay was an insured under the JetPay Policy. GFIC now alleges that JetPay is not an insured under the JetPay Policy. If GFIC's allegation is found to be true, then the representations made by Merrick Bank were false when they were made to JetPay.

36. Merrick Bank did not exercise reasonable care or competence in obtaining or communicating the information regarding JetPay's status as an insured under the JetPay Policy. Had Merrick Bank advised JetPay, prior to the inception of the chargebacks from USN, that JetPay was not an insured under the JetPay Policy, JetPay would have taken action to be

included as an insured on the JetPay Policy, or obtained a separate policy identifying itself as an insured. Further, JetPay would have ceased making the premium payments to Merrick Bank for a policy that did not cover JetPay but only covered Merrick Bank.

37. JetPay has accordingly been damaged in an amount not less than $2,000,000.00 due to the negligent misrepresentations of Merrick Bank.

### FIFTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

38. JetPay repeats and realleges paragraphs 1-17, as if fully set forth herein.

39. Merrick Bank required JetPay to purchase the JetPay Policy. Merrick Bank further required that JetPay make 100% of the premium payments on the JetPay Policy by tendering such premium payments directly to Merrick Bank, and not to GFIC. Merrick Bank knew that JetPay was relying upon and trusted Merrick Bank to properly handle such premium payments, and Merrick Bank otherwise became a trustee over such premium payments.

40. Merrick Bank violated its duties as a trustee over such premium payments, particularly including its fiduciary duty, by failing to use the premium payments received from JetPay to pay for a Merchant Chargeback Insurance Policy which covered JetPay. Instead, Merrick Bank used all such funds to pay for a Merchant Chargeback Insurance Policy which, if GFIC's allegations are found to be true, covered only Merrick Bank as an insured.

41. As a result of Merrick Bank's breach of its fiduciary duty to JetPay, JetPay has been damaged in an amount not less than $2,000,000.00.

### SIXTH CAUSE OF ACTION – UNJUST ENRICHMENT

In the event that the Court determines that no contractual relationship exists between JetPay and Merrick Bank, JetPay alleges as follows in the alternative to the first and second causes of action set forth above:

42. JetPay repeats and realleges paragraphs 1-17, as if fully set forth herein.

43. JetPay conferred a benefit upon Merrick Bank by paying the premium payments for the JetPay Policy to Merrick Bank.

44. Merrick Bank demanded, received and accepted the JetPay Policy premium payments made by JetPay.

45. Merrick Bank knew that JetPay conferred a benefit upon it by paying the premium payments for the JetPay Policy to Merrick Bank.

46. While Merrick Bank ensured that Merrick Bank was included as an insured on the JetPay Policy, GFIC has alleged that JetPay was not included as an insured under such policy. In the event it is determined that GFIC's allegation is true, Merrick Bank's acceptance and retention of the JetPay Policy premium payments made by JetPay would be under such circumstances as to make it inequitable for Merrick Bank to retain the benefit of the JetPay Policy premium payments made by JetPay without payment of the value of such JetPay Policy premium payments.

47. JetPay is entitled to an award of damages in the amount by which Merrick Bank has been unjustly enriched, which amount is not less than $2,000,000.00.

## V.

## JURY DEMAND

JetPay respectfully demands a jury.

4847-0713-1150, v. 1

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, JetPay respectfully prays for judgment against Merrick Bank as follows:

1. Enter a judgment for JetPay and against Merrick Bank in the amount of the actual damages it has caused to JetPay, which is not less than $2,000,000.00;

2. Enter a judgment against Merrick Bank for exemplary damages;

3. Enter a judgment against Merrick Bank for the reasonable and necessary attorneys' fees, expenses and court costs incurred by JetPay;

4. Award JetPay such other and further relief, at law and in equity, to which JetPay may show itself justly entitled.

Dated: February 17, 2012.

          Respectfully submitted,

          PARR BROWN GEE & LOVELESS

          BY: /S/ D. CRAIG PARRY
               D. Craig Parry

          Bryan Haynes (*Pro Hac Vice Admission Pending*)
          Eric C. Wood (*Pro Hac Vice Admission Pending*)
          SCHEEF & STONE, L.L.P.

          Attorneys for Plaintiff
          JetPay Merchant Services, Inc.